IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ANGELA R. MCGREW                                                    PLAINTIFF

      v.                              CIVIL NO. 2:19-CV-2051

ANDREW M. SAUL,[1] Commissioner,
Social Security Administration                                     DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Angela McGrew, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI) under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

### I.      Procedural Background:

Plaintiff protectively filed an application for SSI on November 17, 2016, alleging an inability to work since January 1, 2016, due to bipolar disorder, manic depressive disorder, post-traumatic stress disorder (PTSD), severe anxiety, hiatal hernia, irritable bowel syndrome (IBS), overactive bladder ("OAB"), gastritis, esophagus problems, and psychosis.  (Tr. 54-55, 72-73). An administrative hearing was held on August 28, 2018.  (Tr. 34-51).  Plaintiff was

---

[1] Andrew M. Saul, has been appointed to serve as Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

present and testified.  (Tr. 35-48).  Jim Spragins, Vocational Expert (VE), testified via telephone.  (Tr. 48-51).

In a written opinion dated October 12, 2018, the ALJ found that Plaintiff had the following severe impairments: affective disorder, anxiety disorder, personality disorder, and overactive bladder. (Tr. 17-18).  However, after reviewing the evidence in its entirety, the ALJ determined that the Plaintiff's impairments did not meet or equal the level of severity of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). (Tr. 18-20). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. 416.967(b), except the Plaintiff was limited to simple, routine, repetitive tasks in a setting where interpersonal contact was incidental to the work performed, and she could respond to supervision that was simple, direct, and concrete. (Tr. 20-24).  Plaintiff had no past relevant work; however, with the help of a VE, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as a merchandise marker, a plastic molding machine tender, and a routing clerk.  (Tr. 25).  Ultimately, the ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act since November 17, 2016, the date the application was filed.  (Tr. 26).

Subsequently, Plaintiff requested a review of the hearing decision by the Appeals Council, which denied that request on February 20, 2019.  (Tr. 1-6).  Plaintiff filed a Petition for Judicial Review of the matter on April 22, 2019.  (Doc. 3).  Both parties have submitted briefs, and this case is before the undersigned for report and recommendation.  (Docs. 12, 13).

The Court has reviewed the transcript in its entirety.  The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## II.     Evidence Submitted:

At the August 28, 2018, hearing before the ALJ, Plaintiff testified that she was born on February 5, 1982, and that she had completed "some" college education.  (Tr. 36). Testimony also showed that Plaintiff did not have any past relevant work.  (Tr. 48).

Prior to the relevant time period, Plaintiff was treated for abdominal pain and diarrhea, rectal bleeding, amenorrhea, an ovarian cyst, pneumonia, nasal congestion and sinus infection, sinusitis, bronchitis, shortness of breath, lethargy, chest pain, dysphagia, small hiatal hernia, acute esophagitis, gastroduodenitis without bleeding, esophageal reflux, edema with lower leg pain and swelling, insomnia, ear infection, tendonitis of the right foot, depression, dyspnea, bipolar disorder, and hypokalemia.

On February 14, 2017, Dr. Terry Efird, Ph.D., performed a Mental Diagnostic Evaluation of Plaintiff.  (Tr. 488-491).  Efird's notes showed that Plaintiff endorsed mood swings, decreased interest in activities, sleep problems, decreased appetite, decreased energy, feelings of worthlessness and guilt, and problems concentrating.  (Tr. 488).  Plaintiff also reported difficulty being around others, a history of cutting and burning, a history of intense, unstable relationships, and a fear of abandonment.  Dr. Efird noted Plaintiff's two inpatient psychiatric admissions.[2]  Plaintiff was not seeing a mental health professional but was being prescribed Abilify, Ambien, Klonopin, and Prazosin by her primary care physician.  (Tr. 488). Plaintiff had been on psychiatric medications for a number of years, which were described to

---

[2] The Court notes that the medical record contained no evidence of any inpatient treatment.

Dr. Efird as currently beneficial.  Plaintiff reported her ability to perform basic self-care tasks independently and noted that her ability to perform household chores adequately was impaired by her energy level.  (Tr. 489).  Plaintiff last worked in 2016 at a call center and left that company after approximately two months.  A history of two terminations from employment was reported.    Plaintiff was appropriately dressed and groomed; appeared primarily cooperative; had a somewhat dysphoric to normal mood; had appropriate affect; had speech within reasonable limits; and had logical thoughts.  (Tr. 489).  While suicidal ideations were said to occur approximately twice per week, she denied any plan or intention.  (Tr. 489). Dr. Efird reported Plaintiff's diagnoses of major depressive disorder, social anxiety disorder, and borderline personality disorder.   (Tr. 490). He noted no remarkable indications of acute emotional distress.  Her GAF score was 49-59.  (Tr. 490).  Plaintiff reported the ability to drive unfamiliar routes with a tendency to get lost; the ability to shop independently impaired by anxiety; the ability to handle personal finances; the ability to perform ADL's impacted by energy level; and the ability to interact socially by text message and talking on the phone twice a week to her children, who lived with their father. (Tr. 491).  Dr. Efird observed the following: that Plaintiff communicated and interacted in a reasonably, socially adequate manner; that she communicated in a reasonably intelligible and effective manner; that she had the capacity to perform basic cognitive tasks required for basis work-like activities;  that she appeared to track and respond adequately for the purposes of evaluation; that she completed most tasks during the evaluation and appears to have the mental capacity to persists with tasks if desired; and that she completed most tasks within an adequate time frame.  (Tr. 491).

On February 16, 2017, Dr. Richard Murphy, Jr., Ph.D., authored a letter to Dr. Janet Guyer, Plaintiff's primary care physician, after performing an evaluation.  (Tr. 494).  Dr.

Murphy observed that Plaintiff was oriented to person, time, place, and situation.  She reported diagnoses of bipolar disorder, depression, and anxiety.  He noted that Plaintiff was a good historian and conveyed her life experiences with appropriate affect.  She denied suicidal thoughts, bizarre sensory experiences, or delusional thinking.  Her revised treatment goals were to get out of bed, to be truly happy, and to let go of her past.  Dr. Murphy opined that these were appropriate goals given her life experiences.  (Tr. 494).

Also, on February 16, 2017, Dr. Diane Kogut, Ph.D., a non-examining state medical consultant, performed a Psychiatric Review Technique and a Mental RFC Assessment, wherein she opined that Plaintiff had the capacity to perform semi-skilled work where interpersonal contact was routine, but superficial, e.g. grocery checker; complexity of tasks was learned by experience, several variables, judgment within limits; supervision required was little for routine but detailed for non-routine.  (Tr. 63-64, 65-67).

On May 3, 2017, Dr. Steve Brown, a non-examining state medical consultant, performed a Psychiatric Review Technique and a Mental RFC Assessment, where upon reconsideration, he opined that Plaintiff was capable of performing unskilled work in a setting where interpersonal contact was incidental and the supervision required was simple, direct, and concrete.  (Tr. 80-84).

On October 20, 2017, Plaintiff had an initial diagnostic evaluation at Perspectives Behavioral Health Management.  (Tr. 497).  Plaintiff's diagnosis was post-traumatic stress disorder (PTSD), bipolar disorder, anxiety disorder, and borderline personality disorder.  (Tr. 498-499).  It was recommended that Plaintiff undergo intensive outpatient services, including

individual therapy, group therapy, and medication management. (Tr. 499). On December 5, 2017, Plaintiff came under the care of Dr. Mervin Leader. (Tr. 513).

On October 23, 2017, Plaintiff saw her primary care physician, Dr. Janet Guyer, at RVPCS Mountainburg with complaints of depression. (Tr. 591). Plaintiff stated that she had been in jail recently for not paying child support, which had worsened her depression. She cried often and did not want to leave her bedroom. (Tr. 591). Plaintiff was assessed with situational mixed anxiety and depression and was told to go to the emergency room if she developed thoughts of suicide. (Tr. 594).

On November 6, 2017, Plaintiff returned to Dr. Guyer for a follow up of her depression. Plaintiff reported that her new prescription for Citalopram was causing nausea and vomiting. (Tr. 611). Plaintiff was instructed to cut the dosage in half until side effects improved, then to return to the original dose. (Tr. 614).

Plaintiff saw Dr. Guyer on January 22, 2018, for treatment of her symptoms of sinusitis, including nasal congestion, cough, and ear fullness. (Tr. 630).

On February 22, 2018, Plaintiff returned to Perspectives Behavioral Health Management for a medication check. (Tr. 541). Plaintiff reported having tried to jump out of a moving car during an argument with her husband. She stated that she thought about suicide often but did not have a plan. (Tr. 541). Plaintiff reported abuse by a step-father when she was between the ages of five and seven. Plaintiff also reported that she sometimes takes an extra Clonazepam during the day. (Tr. 541). Plaintiff's prognosis included that she was likely to make mild/modest improvement with treatment. (Tr. 544).

Plaintiff saw Dr. Guyer on April 6, 2018, with complaints of obstructive sleep apnea. (Tr. 651). Plaintiff had a history of symptoms of nasal obstruction, interrupted sleep, snoring, and waking during the night.  Dr. Guyer's notes showed a history of four nasal surgeries. Plaintiff stated that she planned to quit smoking. (Tr. 651).  Plaintiff was referred for a sleep study.  (Tr. 653).

On April 17, 2018, Plaintiff had a medication check with Dr. Baker at Perspectives Behavioral Health. (Tr. 556).  Plaintiff reported that she was seeing her therapist twice a month and that it was helping her.  She reported a periodic increase in anxiety as she dealt with her issues but noted that her depression had lessened.  Dr. Baker noted that Plaintiff stopped her Prazosin on her own, but that her nightmares had not returned.  Plaintiff reported being overwhelmed by family issues and was working on those in therapy.  (Tr. 557).  There were no changes to Plaintiff's medication, and she was to continue the current plan. (Tr. 561).

On April 23, 2018, Plaintiff returned to Perspectives Behavioral Health for a treatment plan update.  Notes indicated Plaintiff was making good progress and needed to continue treatment services.  (Tr. 549).  Notes also indicated that removal from the program would be detrimental to Plaintiff's rehabilitation.   Participation in the RSPMI program was recommended at that time to ensure the most efficient attainment of treatment objectives.  (Tr. 555).

On May 16, 2018, Plaintiff returned to Dr. Guyer for menstrual issues, including painful periods, excessive bleeding, menstrual pain, and a family history of endometriosis.  (Tr. 674).  Plaintiff's physical and mental examination was normal, and she was diagnosed with

menorrhagia with an irregular cycle and dysmenorrhea. (Tr. 676-677). She was prescribed an oral contraceptive. (Tr. 677).

On July 20, 2018, Plaintiff saw Caren Gatlin, counselor, at Perspectives to revisit her treatment plan. (Tr. 573).

On August 9, 2018, Plaintiff saw Dr. Baker for a medication check. (Tr. 575). Dr. Baker noted that Plaintiff's attendance in therapy had been sporadic and her last appointment was actually with a therapist that left the clinic on June 6. Plaintiff reported missing appointments with a new therapist due to issues with transportation. Dr. Baker gave Plaintiff the same medication for another cycle and increased her Lexapro. He also recommended she reschedule with the therapist for her depression, anxiety symptoms. (Tr. 575).

## III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent

positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(C). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 416.920.

## IV.    Discussion:

Plaintiff makes the following arguments on appeal: 1) that the ALJ erred in his determination of Plaintiff's severe impairments; 2) that the ALJ's RFC determination was inconsistent with the record; and 2) that the ALJ erred at Step Five in that Plaintiff could not perform the jobs identified.  (Doc. 12, pp. 1-8).

### A.    Plaintiff's Impairments:

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C.F.R. § 404.1520(c). While "severity is not an onerous requirement for the claimant to meet ... it is also not a toothless standard." Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015) (citations omitted). To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. See Social Security Ruling 96-3p. The claimant has the burden of proof of showing he suffers from a medically-severe impairment at Step Two. See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000).

Plaintiff asserts that the ALJ erred in his Step Two analysis by not finding that Plaintiff's gastrointestinal disorder was a severe impairment.  (Doc. 12, p. 3).  Here, the ALJ found that while Plaintiff sought treatment for symptoms related to her gastrointestinal disorder prior to the relevant time period, there was no diagnosis of a gastrointestinal condition during the relevant time period.  (Tr. 17).  Furthermore, the ALJ found that the record contained evidence of a gastric emptying study performed on January 18, 2016, that was interpreted to reveal no evidence of a gastrointestinal condition.  (Tr. 18).  Based on the fact that Plaintiff was able to benefit from the protein pump inhibitor for her dysphagia and the lack of evidence that she pursued further treatment by her GI specialist, the ALJ found that Plaintiff's

10

gastrointestinal disorder did not cause more than a minimal limitation in her ability to perform work-like activities and was therefore not a severe impairment.  (Tr. 18).

After reviewing the record as a whole, the Court finds that substantial evidence supports the ALJ's determination of Plaintiff's severe impairments during the relevant time period.

### B.    Subjective Complaints and Symptom Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. In addressing Plaintiff's credibility, the ALJ noted that Plaintiff's testimony that she lived with her husband, his ex-mother-in-law, her two stepsons, and their older brother.  (Tr. 46).  Plaintiff testified that she suffered from overactive bladder, diarrhea, anxiety, trouble with her esophagus, a hiatal hernia, bipolar disorder, all of which caused her to have good and bad days each week. (Tr. 40).  Plaintiff testified that she watched television daily and was able to do household chores on her good days.  (Tr. 46). On Plaintiff's Pain Report dated December 10, 2016, she

11

stated that she was not in any physical pain and did not list any medications.  (Tr. 205).  On a Function Report from that same day, Plaintiff  stated that her conditions prevented her from working and being around others; however, she had no problems with personal care, could prepare simple meals, could do the laundry, could go outside to check the mail daily, could drive a car, could ride in a car, could shop on the computer, and could manage her money.  (Tr. 214-217).  She also stated that she enjoyed reading and coloring and spending time with her family.  (Tr. 218-219).  Plaintiff could walk 1/8 of a mile before resting, could pay attention for one hour, and could follow written instructions.  (Tr. 218-219).  Plaintiff's husband also completed a Function Report that closely mirrored Plaintiff's, with the exception of Plaintiff not having any hobbies, not being able to manage her money, and needing someone to accompany her if she left the house.  (Tr. 227-228).

In a second Function Report dated April 4, 2017, Plaintiff reported that she had no problems with personal care.  (Tr. 244).  Plaintiff stated that she and her husband would cook; that she would do laundry; that she drove a car and could ride in a car; that she shopped on the computer for clothes; and that she could manage her money.  (Tr. 245-246).  Plaintiff stated that she did not go out alone due to fear; that she no longer had any hobbies; that she had trouble getting along with people; and that she did not finish what she started.  (Tr. 246-248).  However, Plaintiff stated that she spent time with family; she could walk a half mile; she could pay attention for 15 minutes; and she could follow written and spoken instructions well.  (Tr. 247-248).

With respect to Plaintiff's physical impairments related to her gastrointestinal disorder, medical records show that Plaintiff had a history of complaints related to her overactive bladder, diarrhea, difficulty swallowing (dysphagia), hiatal hernia, and related symptoms prior

to the relevant time period, but the record does not indicate that Plaintiff actively pursued treatment for these issues during the relevant time period. See Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment inconsistent with allegations of pain). Furthermore, the medical records also show that prior to the relevant time period, Plaintiff underwent testing, which yielded normal-to-mild results, and Plaintiff was prescribed a protein pump inhibitor, which provided her partial relief of her symptoms for dysphagia. We note, an impairment which can be controlled by treatment or medication is not considered disabling. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir.2002) (citations omitted).

With respect to Plaintiff's mental impairments, the record demonstrates that Plaintiff was treated conservatively with medication and individual and group therapy. The medical records also show that Plaintiff's medication and therapy were helpful at times and that her mental health conditions improved somewhat with treatment. Impairments that can be controlled with treatment or medication are not disabling. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002). The medical records also show that Plaintiff was non-compliant at times and would stop prescription medication on her own, take more prescription medication than was prescribed, was "sporadic" in her attendance in therapy, and had not followed up to reschedule with the new therapist. See Brown v. Barnhart, 390 F.3d 535, 540-541 (8th Cir. 2004) (citations omitted) ("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits."); Ostronski v. Chater, 94 F.3d 413, 419 (8th Cir. 1996) (complaints of disabling pain and functional limitations are inconsistent with the failure to take prescription pain medication or to seek regular medical treatment for symptoms).

Although it is clear that Plaintiff suffers some degree of limitation, she has not established that she is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### C.   ALJ's RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect h[er] RFC." Id.

In the present case, when determining that Plaintiff could perform unskilled work, the ALJ considered the relevant medical records, the medical opinions from treating and non-examining physicians, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch

14

v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

In the present case, Plaintiff sought treatment for her physical impairments prior to the relevant time period, including tests that yielded normal-to-mild findings and medication that provided some relief. However, the ALJ found that during the relevant time period, Plaintiff did not seek significant treatment for her gastrointestinal issues or her overactive bladder. The ALJ further considered the fact that there was no diagnosis of gastrointestinal conditions made during the relevant time period and that there was no medial evidence that Plaintiff experienced an exacerbation of symptoms requiring intensive intervention or treatment during the relevant time period. The Court notes that Plaintiff's primary care physician, Dr. Guyer, did not indicate that Plaintiff complained of overactive bladder or diarrhea during the relevant time period, nor did she administer any treatment or make any referrals for these conditions.

With regard to Plaintiff's mental conditions, the ALJ considered Dr. Terry Efird's consultative evaluation from February 14, 2017, where Dr. Efird offered diagnoses of major depressive disorder, social anxiety disorder, and borderline personality disorder. (Tr. 490). Dr. Efird opined that Plaintiff showed no remarkable indications of acute emotional distress and concluded that she: communicated and interacted in a reasonably, socially adequate manner; that she communicated in a reasonably intelligible and effective manner; that she had the capacity to perform basic cognitive tasks required for basis work-like activities; that she appeared to track and respond adequately for the purposes of evaluation; that she completed most tasks during the evaluation and appears to have the mental capacity to persists with tasks if desired; and that she completed most tasks within an adequate time frame. (Tr. 491).

15

The ALJ also considered Dr. Richard Murphy's February 16, 2017, letter to Dr. Guyer, where he noted that Plaintiff was oriented to person, time, place, and situation; that she was a good historian; and that she conveyed her life experiences with appropriate affect. Dr. Guyer wrote that that Plaintiff denied suicidal thoughts, bizarre sensory experiences, or delusional thinking, and that her revised treatment goals were to get out of bed, to be truly happy, and to let go of her past.   Dr. Murphy opined that these were appropriate goals given her life experiences.  (Tr. 494).

The ALJ also noted that it was not until October of 2017 that Plaintiff began a mental health treatment program at Perspectives Behavioral Health Management.  Medical records show that while Plaintiff continued to experience symptoms and reported an attempt to jump out of a moving car, she showed some improvement with treatment and was making good progress toward her goals for all diagnoses.  Medical records also indicate that Plaintiff needed to continue treatment services to meet her ultimate discharge goals.

The ALJ also gave great weight to the non-examining medical consultants' opinions and to Dr. Efird's medical opinion.   In deciding whether a claimant is disabled, the ALJ considers medical opinions along with "the rest of the relevant evidence" in the record. 20 C.F.R. § 416.927(b). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." Wagner v. Astrue, 499 F.3d 842, 848 (8th Cir. 2007), citing Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001) (internal citations omitted).

Upon careful review of the record as a whole, the Court finds that Plaintiff's arguments are without merit and that substantial evidence supports the ALJ's RFC determination.

### D.      Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as a merchandise marker, a plastic molding machine tender, and a routing clerk. (Tr. 25). Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### V.      Conclusion:

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

17

DATED this 6th day of April, 2020.


/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE